

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 492 | **DATE** | 10/4/2002 |
| **CASE TITLE** | NANCY N. CONNOLLY vs. ALA CARTE ENTERTAINMENT, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [22-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 07 2002 | 29 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 10/4/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CB | courtroom deputy's initials | | PW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NANCY N. CONNOLLY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 C 0492 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| ALA CARTE ENTERTAINMENT, INC., | ) | **DOCKETED** |
| | ) | |
| Defendant. | ) | OCT 0 7 2002 |

## MEMORANDUM OPINION AND ORDER

Nancy Connolly sues her former employer, Ala Carte Entertainment, Inc. ("Ala Carte"), for terminating her employment because of her pregnancy in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Ala Carte moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. In response to a motion for summary judgment, Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary material."

1



*Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir. 1993).

"A local rule of a federal district court is written by and for district judges to deal with special problems of their court...." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995), *quoting Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101 (7th Cir. 1990). One such problem is the unsavory task of combing through volumes of deposition material to find undisputed facts upon which to base its grant or denial of summary judgment. Thus, "[t]he purpose [of Local Rule 56.1] is to assist the court in identifying the material facts that entitle the movant to judgment as a matter of law, and determining whether those material facts are in dispute." *Ford v. Lumbermens Mutual Casualty Company*, 197 F.R.D. 365, 366 (7th Cir. 2000).

Connolly complains that Ala Carte has abused Local Rule 56.1 by filing a 50-page statement of 375 purportedly undisputed facts. Ala Carte correctly points out that Local Rule 56.1 does not limit the number of uncontested facts. However, the remedial purposes of the rule are not served by Ala Carte's excessive statement. Not only does Ala Carte's statement of undisputed facts burden the court with immaterial facts, Ala Carte imposes an onerous and needless burden on Connolly.

Ala Carte is not only at fault. In response to Ala Carte's 375 facts, Connolly frequently fails to properly dispute facts. Connolly's response to paragraph 199 of Ala Carte's Rule 56.1(a)(3) statement is illustrative:

> 199. Nancy Connolly was terminated due to her attitude with employees and customers. (Marks Dep. Pg. 135).
>
> Response: Plaintiff disputes Paragraph one hundred ninety nine (199). Plaintiff was fired due to the fact she was pregnant, which is clearly a

2

contested material issue in this case. (Pl.'s Dep. 143:1-9; see also, Complaint and footnote 2, supra).

Surely Connolly personally disagrees with paragraph 199. But her opinion is not material. Her conclusion is based on opinion and not personal knowledge. On the other hand, Ala Carte offers testimony of employees and supervisors with knowledge of Connolly's demeanor and the reason she was terminated. Speculation and unsupported conclusions do not create a genuine issue of material fact. *See Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) (plaintiff's speculation is "not a sufficient defense to a summary judgment motion").

## II. The Facts

The following facts are undisputed unless otherwise noted. Excalibur is part of the Ala Carte Entertainment, Inc. corporate group. Connolly began working at Excalibur in March 1999. Connolly had good bartending skills and trained more than 200 employees.

In June 2001, Connolly discovered she was pregnant. In late June or July 2001, Connolly informed her managers of her pregnancy. Connolly knew Excalibur's employment manual entitled her to twelve weeks of unpaid job protected leave. She notified her general manager, Shawn Krutsinger, of her intention to take maternity leave. Krutsinger approved. Krutsinger asked Connolly about pregnancy-related weight gain. Aside from that, no Excalibur supervisors or managers mentioned her pregnancy.

The summary judgment record reflects other Excalibur employee pregnancies. Nanette Santiago was pregnant twice while working at Excalibur. In fact, Santiago's second pregnancy occurred at the same time as Connolly's. Throughout both of her pregnancies, Santiago worked at Excalibur and returned shortly after giving birth. Santiago's second birth occurred on September

29, 2001. Although she did not request a full maternity leave, Excalibur did not pressure Santiago to return to work as soon as she did.

Connolly knew that Ala Carte's employment policy provided for termination based on rude, disrespectful, or intimidating behavior. Def. 56.1 Facts at ¶ 21. During her tenure at Excalibur, Connolly's supervisors received complaints from customers and employees about her behavior. Alisa Marks, Ala Carte's Corporate Supervisor, and Krutsinger were notified of complaints about Connolly. Pl. Res. to Def. 56.1 Facts at ¶ 172; Def. 56.1 Facts at ¶ 212. Michael Durante, Excalibur Floor Manager, wrote up Connolly for failing to offer appetizers to customers. Def. 56.1 Facts at ¶ 282. Durante received several customer complaints that Connolly was "short or snippy." *Id.* at ¶ 283. Durante, however, never wrote up Connolly for these complaints or reported her to the general manager. Pl. Ex. G, at 24-26. Todd Koyak, Excalibur Floor Manager, claimed he received more customer complaints about Connolly than other bartenders. Pl. Res. to Def. 56.1 Facts at ¶ 305. Although other bartenders received customer complaints (Pl. Ex. G, at 24), the summary judgment record does not indicate Excalibur received employee or customer complaints of rudeness about any bartender except Connolly.

On October 3, 2001, Krutsinger instructed Koyak to write up Connolly for her rude attitude toward a customer. Def. 56.1 Facts at ¶ 304. Connolly disputed the write up on the basis that complaining customers were hostile before talking to her. Pl. Ex. M, at 2. Koyak's write up warned Connolly that "[f]urther attitude prob[lems] will result in the highest possible disciplinary action." *Id.* at 1.

KAM Data has supplied Ala Carte with undercover employees and mystery shoppers for fifteen years. Connolly knew Ala Carte's policy provided for termination of employment for

4

unfavorable ratings that resulted from covert observations. Def. 56.1 Facts at ¶ 24. In August 2001, Keith McCrae, owner of KAM Data, interviewed Amy Starcevic as a potential undercover bartender. McCrae arranged for Starcevic to interview with William McFall, Director of Operations for Ala Carte's Chicago properties. McFall hired Starcevic to bartend as an Excalibur undercover employee. McCrae then instructed Starcevic to write weekly undercover shopper reports and send them directly to him at KAM Data. Starcevic's first day at Excalibur was September 11, 2001.

On September 18, 2002, Connolly trained Starcevic. In her undercover report to McCrae, Starcevic detailed her training session with Connolly. Pl. Ex. P, at 2-3. She claimed Connolly was short, condescending, and unapproachable; that Connolly treated her like the enemy; and that Connolly spoiled her image of Excalibur. *Id.* After her training session with Connolly, Starcevic was "emotionally exhausted" and "hated Excalibur" because Connolly "left a bad impression in her head." Pl. Res. to Def. 56.1 Facts at ¶ 100.

On September 25, 2002, Starcevic sent McCrae her weekly report. Two days later, McCrae forwarded Starcevic's report to James Earley, Corporate General Manager of Ala Carte.[1] Earley reviewed the report. On October 4, 2001, he had a discussion with Marks and Krutsinger. Earley asked them whether Connolly was "rude to people," and they both responded, "Absolutely." Def. 56.1 Facts at ¶ 144. Marks and Krutsinger informed Earley that Connolly had been written up the night before, October 3, 2001, for rudeness to customers. Connolly argues there is a question of fact

---

[1] Starcevic wrote two letters referring to her experience with Connolly on September 18, 2001. Her first was an email report to KAM Data on September 25, 2001. Her second was a summary of her experience that she provided to Ala Carte in January 2002. At Earley's deposition, he identified the January 2002 summary as the letter he received from KAM Data in September 2001. Connolly asserts this creates a credibility issue. Earley's mistake at his deposition does not alter the fact that he received *a* Starcevic report from KAM Data in September 2001, and that report formed the basis for his discussion with Marks and Krutsinger about Connolly's termination.

5

whether Earley met personally with Marks and Krutsinger or spoke to them on the telephone on October 4, 2001. This dispute is immaterial. It does not change the fact that Earley, Marks, and Krutsinger discussed Connolly's rude behavior and terminated her employment thereafter.

## DISCUSSION

### I. The Summary Judgment Standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

### II. Pregnancy Discrimination Under Title VII

Title VII prohibits an employer from discharging or otherwise discriminating against an employee in the terms, conditions, or privileges of employment based on the employee's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). The Pregnancy Discrimination Act clarified that pregnancy discrimination is included in Title VII's prohibition against sex discrimination. *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1154 (7th Cir. 1997); 42 U.S.C. §

6

2000e(k). To prove discrimination under Title VII, Connolly must offer either direct or indirect evidence of discrimination. *See Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). She does not offer direct evidence Ala Carte terminated her employment because of her pregnancy. Rather, she relies on the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish her pregnancy discrimination claim. If Connolly presents a *prima facie* case, the burden of production shifts to Ala Carte to present a legitimate, nondiscriminatory reason for her discharge. *Clay v. Holy Cross Hospital*, 253 F.3d 1000, 1005 (7th Cir. 2001), *citing Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 672 (7th Cir. 2000). If Ala Carte tenders a legitimate reason for termination, Connolly must prove by a preponderance of the evidence that the employer's reason for discharge was a pretext for intentional discrimination. *Id.* Ultimately, the burden to prove intentional discrimination remains on Connolly. *Id.*

**A. Prima Facie Case**

To establish a *prima facie* case of pregnancy discrimination, Connolly must show: "(1) she was pregnant (a member of a protected class) and her employer knew she was pregnant; (2) she was performing her duties satisfactorily; (3) she was discharged or demoted; and (4) similarly situated employees not in the protected class were treated more favorably." *Ilhardt*, 118 F.3d at 1154. Ala Carte concedes that Connolly establishes the first and third elements, but argues summary judgment is appropriate because Connolly cannot establish the second and fourth elements of a *prima facie* case.

**1. Performing Satisfactorily**

Connolly had good bartending skills. She provided Excalibur with consistent sales and trained more than 200 employees. However, Connolly's supervisors received numerous complaints

7

that she was rude. She was written up twice: for failing to offer appetizers and for rudeness. Connolly only disputes the circumstances surrounding her second write up – for rudeness. The rudeness write up occurred after a customer complained Connolly was rude because Connolly ignored her. Pl. Ex. M, at 1. Connolly maintains the complaining customer was upset before coming into contact with her. *Id.* at 2. Connolly also questions the propriety of the write up because she claims her supervisors failed to fully investigate the complaint. In considering the evidence in the light most favorable to Connolly, even if the rudeness write up were baseless, Ala Carte presents other undisputed evidence of Connolly's rudeness. Durante had reservations regarding Connolly's attitude, "which at time was poor." Def. 56.1 Facts at ¶ 283. Krutsinger received complaints about Connolly (*id.* at ¶ 212) and claimed Connolly was not friendly. Pl. Res. to Def. 56.1 Facts at ¶ 218. After Connolly's training session with Starcevic, Connolly was the subject of a lengthy, unfavorable report. Pl. Ex. P. Although Connolly satisfactorily poured drinks and made sales, the summary judgment record establishes she was rude to customers and other employees. Thus, she was not performing her duties satisfactorily.

**2. Similarly Situated**

Connolly must establish Ala Carte treated similarly situated employees outside of her protected class more favorably. To do so, Connolly must demonstrate that another employee was treated more favorably and is directly comparable to her in all material respects. *Greer v. Board of Education of the City of Chicago*, 267 F.3d 723, 728 (7th Cir. 2001); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000); *Spath v. Hayes Wheel's Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). A court must look at all relevant factors, including whether employees dealt with the same supervisor and were subject to the same standards. *Radue*, 219 F.3d at 617-18.

Connolly asserts that Marks, Koyak, and Mike Hill were similarly situated individuals who Ala Carte treated more favorably. Her comparison is flawed. First, Marks and Koyak were both managers; Connolly was a bartender. Supervisors and superiors are not similarly situated to subordinates. *Rodriguez v. Motorola, Inc.*, 2001 WL 968651, *6 (N.D. Ill. 2001); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir. 1993) (manager not similarly situated to subordinate employee); *Jackson v. Northwestern Ill. Univ.*, 2000 WL 1853331, *3 (N.D. Ill. 2000) (plaintiff who cited punishment that supervisors and superiors received failed to establish similarly situated employee treated more favorably).

Connolly argues that Mike Hill was a similarly situated bartender who was treated more favorably. Connolly directs the court to two write ups that Hill received. The first, dated February 6, 1999, complained of Hill's work quality and is identified as a "verbal warning." Pl. Ex. U. The second, dated October 23, 1999, informed Hill not to tell other employees what to do and warned him of termination should his conduct persist. Pl. Ex. V. Although Hill and Connolly were similarly positioned – each were bartenders – the complaints about their conduct are not comparable. Hill's work quality and bossiness are not comparable to Connolly's rudeness to customers and employees and a damaging undercover report. Therefore, Hill and Connolly are not similarly situated employees. Connolly does not present evidence of other Excalibur bartenders or employees who were repeatedly criticized by managers for rudeness. Connolly fails to show substantial similarity to meet the similarly situated requirement.

**B. Legitimate Non-Discriminatory Reason**

Even if Connolly could establish a *prima facie* case of discrimination, Ala Carte has provided a legitimate reason for her dismissal. Ala Carte's employment policy warranted employee

9

termination for rude behavior or unfavorable undercover ratings. Ala Carte offers testimony by supervisors and employees about Connolly's rude behavior. Connolly only disputes her second write up – for rudeness. Ala Carte's other evidence is uncontradicted, and Starcevic's report further establishes a legitimate, nondiscriminatory reason for her termination.

## C. Pretext

When an employer offers a reason for its employment decision, the employee must show that the reason is pretextual. *Ghosh v. Indiana Dep't of Environmental Mgmt.*, 192 F.3d 1087, 1091-92 (7th Cir. 1999). Connolly directs the court's attention to her skill as a bartender. Ala Carte does not dispute that Connolly had good bartending skills. She trained more than 200 other Excalibur bartenders and her bar sales were consistent. Connolly knew, however, that pouring drinks and consistent sales were not her only job requirements. Def. 56.1 Facts at ¶¶ 21, 22. The customer, employee, and undercover reports of Connolly's rudeness establish she was not performing to Ala Carte's expectations. Connolly argues Excalibur bartenders are routinely exposed to complaints from demanding customers, but Connolly does not identify any other Excalibur bartender who continued to work amid reports of rudeness to customers and staff. *See* Pl. Ex. U and V (Hill's complaints limited to work quality and bossiness).

An inference of pretext is reasonable only when decisionmakers make false or inconsistent statements about a particular employment decision. *Krchnavy v. Limagrain Genetics Corporation*, 294 F.3d 871, 876-77 (7th Cir. 2002). Connolly points to inconsistencies in the record regarding the alleged meeting between Earley, Krutsinger, and Marks on October 4, 2001. Although Earley claims he met with Krutsinger and Marks to discuss Connolly (Pl. Ex. C, at 55), Connolly's discharge report mentions only a phone call from Earley. Pl. Ex. O. Whether Earley, Krutsinger, and Marks met

personally or spoke on the phone is immaterial to whether Connolly's rude behavior was Ala Carte's motivation for her discharge.

Connolly fails to raise an issue of fact about Excalibur's record of employing pregnant women. Just prior to Connolly's termination, Santiago delivered her baby after having worked at Excalibur throughout her pregnancy. Although Santiago did not request unpaid maternity leave as did Connolly, nothing in the record indicates Excalibur was anxious for Santiago to return before she was ready.

Although the record suggests Connolly had good bartending skills, the fact that she performed some tasks well does not compel this court to conclude that her termination was a pretext for discrimination. *See Anderson v. Stauffer Chemical*, 965 F.2d 397, 403 (7th Cir. 1992). Connolly fails to demonstrate that Ala Carte's proffered reason for her termination is false. She has failed to present evidence that Ala Carte did not honestly believe she was terminated for rudeness.

## CONCLUSION

Connolly cannot establish a *prima facie* case of discrimination. Although she had good bartending skills, repeated complaints of her rudeness establish she was not performing satisfactorily. Connolly fails to meet the similarly situated requirement as she provides no evidence of Ala Carte employees who were criticized for rudeness. Ala Carte offers testimony and evidence of Connolly's rudeness in the form of customer, staff, and undercover complaints, which provided a legitimate reason to dismiss Connolly. Lastly, Connolly has not established that Ala Carte's reasons for dismissal served as a pretext for discrimination. She offers no evidence to establish that Ala Carte

did not honestly believe that rudeness to customers and staff were the reason for her termination.

Accordingly, Ala Carte's motion for summary judgment is granted.

October 4, 2002

ENTER:

Suzanne B. Conlon
United States District Judge